In re PINE HILL.

(Ulster County Court.  April 12, 1895.)

1. INCORPORATION OF VILLAGES—VALIDITY—NEGLIGENCE OF INSPECTORS.
   A failure or neglect on the part of any member of the board of inspectors of election to properly comply with the law relating to the incorporation of villages does not, of itself, vitiate the election, though it may subject such inspector to punishment.

2. SAME—NOTICE OF ELECTION—WHO MAY SIGN.
   Under Laws 1870, c. 291, tit. 1, § 7, as amended by Laws 1888, c. 172, which provides that a notice to determine whether certain territory shall be incorporated as a village "shall be signed by at least twenty of the electors resident within the bounds of the said proposed village who shall be liable to be assessed for the ordinary and extraordinary expenditures of said village," a man who owns no property is not qualified to sign the petition, though his wife owns real estate within such territory, on which she is liable to assessment and taxation.

Proceeding for the incorporation of a portion of the town of Shandaken, in the county of Ulster, as the village of Pine Hill. The certificate and other papers relating to the election were duly filed, and one of the electors appeals.  Election set aside.

F. B. Andrus and John G. Van Etten, for appellant.

Bernard & Van Wagenen, for respondents.

CLEARWATER, J.  This is an appeal to review proceedings taken to incorporate a portion of the town of Shandaken, in the county of Ulster, as the village of Pine Hill.  It appears that on the 11th day of March, 1895, an election was held within the limits of the district which it is proposed to incorporate, and that on the 15th day of March a certificate of such election was duly filed in the office of the clerk of the county of Ulster.  It is alleged by the appellant that Joseph H. Riseley, the acting supervisor of the town of Shandaken, at the time of the holding of the election, did not meet with the board of inspectors until after a number of ballots had been deposited in the ballot box; that none of the inspectors of election, or either the poll or ballot clerks, took the constitutional oath of office prior to the organization of the board of inspectors or the receiving of ballots; and that the town clerk of the town was not in attendance during the day, and did not sign certificate of election or the canvass of votes.

A careful examination of the various acts passed by the legislature for the regulation and conduct of elections has led me to

the conclusion that they should be liberally construed in favor of the election itself, and that a failure or neglect upon the part of any member of the board of inspectors to properly comply with the law does not, of itself, vitiate the election, although it may and does subject the derelict officer to severe penalties and punishment. I am therefore inclined to disregard so much of the objections filed by the appellant as are based upon a failure of the election officers to properly discharge the duties imposed upon them by law.

The statute provides that any part of any town, not in any incorporated village, containing a resident population of not less than 300 persons, may be incorporated as a village by complying with the provisions of the act, one of which is that a notice to determine whether the proposed territory shall be incorporated, signed by at least 20 of the electors resident within the bounds of the proposed village, who shall be liable to be assessed for the ordinary and extraordinary expenditures of the village, shall be published in a newspaper, if there be one within the territory, and shall be posted in 10 public places within its bounds, at least 30 days before the holding of the election. It seems to be conceded that the notice which was signed was properly published and posted within the stipulated time. It is claimed, however, by the appellant, that, of the 24 persons who signed the notice, at least 10 were not liable to be assessed, as required by the statute. It has repeatedly been held that this provision of the statute is jurisdictional, and that a failure to substantially comply with its requirements is fatal to the validity of the proceedings for incorporation, for the obvious reason that it is necessary, before a village be incorporated, that at least 20 persons liable to be assessed for the increased expense of maintaining a distinct municipality shall signify in writing their willingness to assume their proportionate share of the additional burden. All of the signatories were confessedly electors resident within the bounds of the proposed village. Some of them did not own any property, but were married to women who were freeholders in their own right, seised of real estate within the territory proposed to be incorporated, and liable to assessment and taxation thereon. It is urged that the statute should be so construed as to include these signers, but to this construction I am unable to agree. The statute is clear and unambiguous in its language, admitting of no other interpretation than the simple import of the words: "Shall be signed by at least twenty of the electors resident within the bounds of the said proposed village, who shall be liable to be assessed for the ordinary and extraordinary expenditures of said village."[1] The constitution defines an elector to be a male citizen of the age of 21 years, who shall have been a citizen of the United States 10 days, and an inhabitant of this state 1 year, next preceding any election, and for the last four months a resident of the county in which he may offer his vote. Const. art. 2, § 1. The wives of

---

[1] Laws 1870, c. 291, tit. 1, § 7, as amended by Laws 1888, c. 172.

these signatories were not electors. The husbands who signed the notice were electors, but they were not liable to be assessed for the ordinary and extraordinary expenditures of the village.

It is also claimed that some of the signatories were the owners of an interest in real property, the title to which was in others, and that they, therefore, were competent, and that still others, having no interest in real estate, were the owners of personal property liable to assessment. But some of the signatories admitted that they were insolvent to such an extent that unsatisfied judgments existed against them, upon which executions had been issued to the sheriff of the county, and by him returned unsatisfied, because of his inability to find sufficient real or personal property out of which to satisfy them, and that these judgments had never been paid. It can hardly be claimed that signatories thus situated, owning no freehold interest in real estate, and whose interest in personal property is of so vague and indefinite a character that it cannot be seized in satisfaction of an execution, can correctly be said to possess property liable to assessment for the ordinary and extraordinary expenses of the new municipality.

A careful review of the entire testimony, with every disposition to be indulgent to the proposed incorporators, so far as that is possible without the violation of any well-settled legal principle, leads me to the conclusion that at least six of the signatories were not competent, within the meaning of the law. It is not without regret that I have reached this conclusion, as this is the second attempt made by the residents of Pine Hill to effect an incorporation. The difficulty in both instances seems to have originated from a lack of sufficient care in taking the initiatory and jurisdictional steps. It is not a proper exercise of judicial power to so construe a statute as to permit its evasion, and I am constrained to hold that the proceedings are fatally defective, the election to have been illegal, and to grant an order directing another election to be held to determine the question.